### STATE OF MISSISSIPPI *v.* ROBERT SEYMOUR.

SHIP ISLAND. *Criminal jurisdiction. Laws* 1858, *special session, p.* 49.

> The courts of this state have no jurisdiction of crimes committed on Ship Island, or within 1,760 yards from low-water mark thereon, and have not had such jurisdiction since November 15, 1858. Laws special session 1858, pp. 49, 50.

FROM the circuit court of Harrison county.

HON. THADDEUS A. WOOD, Judge.

The facts are stated in the opinion of the court.

The act of cession, approved November 15, 1858, is as follows:

"AN ACT to cede to the United States jurisdiction over a certain island in the Gulf of Mexico, on the coast of Mississippi, known as Ship Island.

"SECTION 1. *Be it enacted by the legislature of the State of Mississippi,* For the purpose of enabling the United States to carry into effect an act of congress of March 3, 1857, providing for the fortification of Ship Island, coast of Mississippi, by building and maintaining such forts, magazines, arsenals, dockyards, wharves and other structures, with their appendages, as may be necessary for the object aforesaid, jurisdiction is hereby ceded to the United States over the said Ship Island, in the Gulf

of Mexico, coast of Mississippi, to include all of said island above and within low-water mark, and over all the contiguous shores, flats and waters within 1,760 yards from low-water mark, and all right, title and claim which this state may have in or to the said Ship Island, coast of Mississippi, are hereby granted to the United States; *Provided,* That this state shall retain a concurrent jurisdiction with the United States in and over all the premises aforesaid so far that all civil process and such criminal process as may issue under the authority of this state against any person or persons charged with crimes committed without the premises aforesaid may be executed therein in the same way and manner as if jurisdiction had not been ceded as aforesaid.

"SEC. 2. The premises over which jurisdiction is granted by this act, and all structures and other property thereon, shall be exonerated and discharged from all taxes and assessments which may be laid or imposed under the authority of this state while said premises shall remain the property of the United States and shall be used for the purposes intended by this act.

"SEC. 3. This act shall take effect from and after its passage.

"Approved November 15, 1858."

*W. A. White,* district attorney, for appellant.

It is not contended that Ship Island was not originally a part of Harrison county, Mississippi. When the county was established on the fifth day of February, 1841, the limit of the southern boundary of said county extended to the middle of the Bay of Biloxi.

The decision rests upon a special act of the legislature, entitled, " An act to cede to the United States jurisdiction over a certain island in the Gulf of Mexico, on the coast of Mississippi, known as Ship Island," approved Nov. 15, 1858. By this act all the right, title and interest whatever which the State of Mississippi had in and to Ship Island was granted to the United States. The grant of course was accepted.

The act ceding the premises to the United States contained a provision, reserving the right of this state to execute all civil and criminal process as might issue under the authority of the state on persons going upon said ceded premises who had done acts, or committed crimes outside of the limits of the island ceded to the United States, on Nov. 15, 1858, by the state, and as Biloxi is a growing city with a multitude of peo-people seeking work on the island, in which jurisdiction various crimes are committed, this appeal is prosecuted to get an adjudication by the court of last resort, so that there may be congressional legislation, if necessary, in the event the decision is adverse to the state's jurisdiction.

*Monroe McClurg*, attorney-general, on same side.

It is well settled that conditional sessions may be made and that acceptance and use by the federal government must be according to the conditions named. *Palmer* v. *Barrett*, 162 U. S., 399 (402-3).

The act of congress of March 3, 1857, was absolutely nothing but an appropriation of one hundred thousand dollars for the ensuing year, ending June 30, 1858, "for fortification Ship Island, coast of Mississippi." 11 U. S. Statutes at Large, 191, 192. To carry this act of congress into effect by building and maintaining forts, magazines, dockyards, wharves and other structures necessary to that particular end, the cession of 1857 was made. It is so declared in the caption and in the body of the act. Chapter 4, acts of 1857, p. 49. The demurrer to the special plea should have been sustained. The plea fails to allege (1) that the cession made by the state for a special purpose has ever been accepted by the United States government, or (2) that the purposes for which the cession was made have ever been carried out, or (3) that the conditions named in the act of cession have been made and are yet being complied with.

In view of the particular language used in the act of ces-

sion by the Mississippi legislature, reserving special limitations
upon the grant aside from the question of criminal jurisdic-
tion and the running of civil and criminal process, it was nec-
essary to prove upon the trial, after the demurrer to the plea
had been overruled, that the federal government had in fact
accepted the grant of the island.    No mere formal acceptance
by act of congress or department order would have answered;
it should have been shown that forts, arsenals, barracks, etc.,
had been constructed according to the purpose and intent of
the grant and were still being kept up.    No such proof having
been made, it was error, in face of defendant's confession of
guilt in open court and on the witness stand, to grant an in-
struction directing the jury to acquit him.    He should have
been convicted.

*Bullard & Bullard* and *E. M. Barber*, for appellee.

The court below had no jurisdiction, for the reason that, as
shown by the agreed statement of facts between the state and
the defendant herein, the defendants are charged with having
committed the alleged offense within 1,760 yards of the shores
of the island of Ship Island.

In the year 1858 the State of Mississippi, by act of the leg-
islature, approved November 15 of said year, ceded to the
United States jurisdiction over the island of Ship Island and
"all of the contiguous shores, flats and waters within 1,760
yards from low-water mark, and all right, title and claim which
this state may have in or to the said island of Ship Island, coast
of Mississippi, are hereby granted to the United States." The
state reserved concurrent jurisdiction in the following proviso:
"Provided that this state shall retain a concurrent jurisdiction
with the United States in and over all of the premises afore-
said, so far that all civil process and such criminal process as
may issue under the authority of this state against any person
or persons charged with crimes committed without the premises
aforesaid, may be executed therein in the same way and man-
ner as if jurisdiction had not been ceded as aforesaid."

By this act the state ceded to the United States all jurisdiction to try persons for crimes and offenses committed within the island of Ship Island and one mile from the low-water mark of its shores. This intent is clearly shown from the fact that the state only reserved concurrent jurisdiction to execute criminal process within the ceded premises for crimes committed elsewhere, or within the language of the statute, "for crimes committed without the premises as aforesaid." The state only reserved the right to send its officers on or within the ceded territory to execute criminal process in crimes and offenses committed within the state, and not within the one mile of low-water mark of Ship Island. Laws of Mississippi, called session of the legislature, November, 1858, ch. 17, p. 49.

Calhoon, J., delivered the opinion of the court.

Seymour was arraigned for trial in the circuit court of Harrison county on a charge of conspiracy to prevent one Ladnier from carrying on his lawful business. He pleaded to the jurisdiction of the court, setting up that the alleged offense was committed within 1,760 yards of the low-water mark of Ship Island, and in territory in the exclusive jurisdiction of the courts of the United States. The court overruled the demurrer of the state to the plea, and, on the trial on the plea and a plea of not guilty, it being admitted that the offense was committed as charged, but within the territorial limits mentioned in the special plea, the jury acquitted Seymour, by the peremptory instruction of the court, and the state appeals.

As stated by the attorney-general, Ship Island was a part of Mississippi on her admission into the union, December 10, 1817, and, by order of the president of the United States of date August 30, 1847, the entire island was reserved for military purposes, and on July 7, 1852, by his order, fifty acres at its western end were reserved for lighthouse purposes. Subsequently the congress of the United States, on March 3, 1857, passed an act providing for the fortification of the island and

the construction on it of magazines, arsenals, dockyards, etc.
The legislature of Mississippi, on November 15, 1858 (laws
1858, called session, pp. 49, 50), passed an act entitled "An
act to cede to the United States jurisdiction over a certain
island in the Gulf of Mexico, on the coast of Mississippi,
known as Ship Island," stating on its face that it was "for the
purpose of enabling the United States to carry into effect" the
above mentioned act of congress. This act of 1858 proceeds,
after stating that it was passed for the above purpose, as fol-
lows: "Jurisdiction is hereby ceded to the United States over
the said Ship Island, . . . . to include all of said island
above and within low-water mark, and over all contiguous
shores, flats and waters within 1,760 yards from low-water
mark, and all right, title and claim which this state may have
in or to the said Ship Island . . . . are hereby granted
to the United States; provided, that this state shall retain a
concurrent jurisdiction with the United States in and over all
the premises aforesaid, so that all civil process and such crim-
inal process as may issue under the authority of this state
against any person or persons charged with crimes committed
without the premises aforesaid may be executed therein in the
same way and manner as if jurisdiction had not been ceded as
aforesaid." Section 2 of the act exonerates the premises from
state taxation while they remain the property of the United
States and used for the purposes mentioned.

There is no averment in the special plea that the cession by
the state was ever accepted by the United States, or that any
fortifications, etc., were ever constructed, or that the island is
being used by the United States for the purposes mentioned in
the act, and there is no replication setting up nonuser. The
opinion of Justice Field, speaking for a unanimous court, in
the case of *Railroad Co.* v. *Lowe*, 114 U. S., 525, s.c. 5 Sup.
Ct., 995, 29 L. Ed., 264, settles the case at bar. This opin-
ion and the cases it cites seem conclusive of this. The cession
by the state of Kansas to the United States was in nearly the

same language as the Mississippi act, with the same reservation of service of civil and criminal process. The court held that "the acceptance of the act [of cession] is to be presumed, in the absence of any dissent," and that it ended all state jurisdiction, except the reserved right to serve civil process and also criminal process, so that the ceded territory should not become a refuge and sanctuary for criminals fleeing from state jurisdiction. We concur in that opinion, and the action of the court below is

*Affirmed.*